JOHN R. HODSON, Appellant,

*vs.*

DAVID S. TREAT and ELIZA A. TREAT, Respondents.

APPEAL FROM THE ROCK CIRCUIT COURT.

The owner of the equity of redemption is a necessary party to a foreclosure suit.

A mortgagor may sell the premises mortgaged, and his grantee takes the equity of redemption, which can be barred only by proceedings for foreclosure to which he is a party, or by lapse of time.

A sale by the mortgagor of his equity of redemption, is not fraudulent as to the mortgagee.

Semble. A *bona fide* purchaser at a foreclosure sale without notice, has preference to the grantee of the mortgagor's equity of redemption, whose deed is unrecorded.

When the purchaser at a foreclosure sale has notice of the outstanding equity of redemption in a person not a party to the suit, he will not be protected against such equity.

A conveyance by the mortgagor of his equity of redemption, though fraudulent and void as to the creditors of the former, is not void as to the mortgagee.

Verbal notice given at the time and place of sale of the owner's equity of redemption is sufficient, though his deed is not recorded, and such notice given to the solicitor is sufficient to charge his client.

This was a bill filed by the appellant, Hodson, to redeem certain premises, or real estate, which had been sold under a decree of foreclosure.

The bill alleges that on or about the 21st of November, 1850, William Hodson, who was then the owner in fee of the premises in question, executed and delivered to Eliza A. Morgan, who afterwards intermarried with David S. Treat, a mortgage thereon, to secure the payment of one hundred and fifty dollars, in one year from date, with interest thereon, at

the rate of twenty-five per cent. per annum until paid, accord-
ing to the condition of a certain promissory note bearing even
date with said mortgage.    The mortgage contained the usual
power of sale, and was duly recorded.

The bill further alleges that subsequent to the execution
and record of said mortgage as aforesaid, and whilst the said
William Hodson was still the owner, and seized and possessed
of said premises as aforesaid, to wit: on the twenty-ninth day
of September, in the year of our Lord one thousand eight
hundred and fifty-one, the plaintiff purchased of the said Wil-
liam Hodson, in consideration of the sum of five hundred
dollars, or thereabouts, the said real estate and premises above
described ; that the said William Hodson and Sarah Hodson,
his wife, on the day and year last above mentioned, made and
executed under their hands and seals, and delivered to the
said John R. Hodson, a warranty deed of the said premises
above described, with the appurtenances ; and the considera-
tion above mentioned was thereupon paid by the plaintiff to the
said William Hodson, which deed was duly acknowledged by
the said William Hodson and Sarah Hodson, on the said twen-
ty-ninth day of September, one thousand eight hundred and
fifty-one, and which deed was duly recorded in the office of the
register of deeds for said county of Rock, on the tenth day of
February, in the year one thousand eight hundred and fifty-
three, and is as follows :

" That on the twenty-eighth day of January, in the year of
our Lord one thousand eight hundred and fifty-two, the said
Eliza A. Morgan by Sanford A. Hudson, her solicitor, filed in
the office of the clerk of this court, her bill of complaint for
the foreclosure of the said mortgage, and praying that a decree
might be granted for the sale of the mortgaged premises afore-
said, and for the payment of the amount then due to the said
Eliza A. Morgan, for the principal and interest upon the said
note and mortgage, and for costs of her suit; and that the said

defendants and all other persons claiming under them subsequent to the commencement of that suit, and all other persons although not made parties in that suit, who had any claim or lien thereon by or under any such judgment or decree, either as purchasers, incumbrancers or otherwise, might be barred and foreclosed of all equity of redemption in the said premises; and that the said Eliza A. Morgan might have such further or such other relief as the nature of the case might require, and as to the court might seem proper and agreeable to equity; and also for the usual writ of subpœna issued out of and under the seal of the court, to be directed to William Hodson, Sarah Hodson, Loren Sexton, John Wing, Jr., and Lester Wing, who were made parties defendant to the said bill of complaint. A subpœna was then issued in pursuance of the prayer of said bill, and was directed to the said William Hodson, Sarah Hodson, Loren Sexton, John Wing, Jr., and Lester Sexton, as defendants; and the plaintiff avers and so charges the truth to be that the said William Hodson, Sarah Hodson, Loren Sexton, John Wing, Jr., and Lester Sexton, were the only person or persons who were made defendants in said bill of complaint, or mentioned in said writ of subpœna; that the same was made returnable on the twelfth day of February next, following the date thereof, and was returned by the sheriff of the county of Rock, duly served on William Hodson and Sarah Hodson, two of the defendants named, and that a second supbœna was also issued as of the same date, and made returnable on the same day as the first, and was directed to the sheriff of Milwaukee county, who made return thereof that he had served the same on John Wing and Lester Sexton, two of said defendants, and that the said Loren Sexton was not in the State.

The bill also alleges that the usual orders to answer were entered, that the defendants made default, and that the bill was taken as confessed against all the parties to the suit; and

that on the 28th day of September, 1852, it was ordered, adjudged and decreed, that there was then due the said Eliza Morgan from said William Hodson the sum of $219. 20, and that the mortgaged premises be sold, &c., in the usual form.

The bill further alleges that on the 5th day of October, 1852, the commissioner appointed to make said sale, John M. Case, gave public notice of the time and place thereof by advertisement published in the Janesville *Gazette*, a public newspaper printed in said county of Rock, at least six weeks, (once in each week,) in pursuance of the decree; that on the 11th day of December, 1852, the time of such sale, the premises were struck off to Sanford A. Hudson for the sum of $270, that being the highest sum bidden for the same; and that thereupon, on the same day, the said commissioner executed to the said Sanford A. Hudson a deed in the usual form for said premises.

The complainant then states that he is informed and believes and so charges the truth to be that the said Sanford A. Hudson attended said sale, for the purpose of protecting the interests of the said Eliza A. Morgan, and as her solicitor, with the full understanding and agreement between the said Eliza A. Morgan, and the said Sanford A. Hudson, that he should attend such sale and purchase the said premises in his own name; and if she, the said Eliza A. Morgan, became convinced that the title thereto was perfect, she, the said Eliza A. Morgan, was to receive a deed of said property instead of the money therefor as the proceeds of such sale as aforesaid; that said premises were sold at such sale for much less than their real value; that said Sanford A. Hudson took said deed in payment and satisfaction of said notes and mortgage; that no money was paid over to the said William Hodson or to the said Eliza A. Morgan on the amount of such sale. But that the said Sanford A. Hudson in purchasing said property, taking said deed and recording the same, acted as the mere

agent and trustee of the said Eliza A. Morgan, and retained such deed and title in his own name, until the said Eliza A. Morgan could become satisfied that the title to said property was good; and as soon as she did become so satisfied, and on the twenty-second day of July, A. D. 1853, the said Sanford A. Hudson and Sarah Hudson, his wife, made, executed and delivered, under their hands and seals, to the said Eliza A. Morgan, a quit-claim deed of the said premises; and the plaintiff avers that the only consideration that was paid or that passed for either of the sales last above mentioned, was the two hundred and seventy dollars allowed on the note and mortgage aforesaid, as the amount due thereon, and for which the said premises were struck off at said sale.

"And further states and shows that at the time of the commencement of the said suit for the foreclosure of said mortgage as aforesaid, by the said Eliza A. Morgan, the legal and equitable title to the said mortgaged premises above described, were in the plaintiff, and that he was, and still is the owner in fee-simple thereof; that he never has in any wise parted with or disposed of any of his right, title or interest in said premises; that he neglected to cause a record of said deed from said William Hodson and Sarah Hodson to be made until the tenth day of February, A. D. 1853, as above set forth, and that he was not made a party to said bill of complaint, so filed as afosesaid, or to any subsequent proceedings had therein, or received any legal notice of the pendency of said suit, so that he avers that his equity of redemption in said premises has not been foreclosed or in any wise affected by said suit, or the sale of said premises. And he further avers that at the time and place of said sale, at the said public auction by the said commissioner as aforesaid, he caused public notice to be given, by proclamation, in the presence and hearing of all who attended said sale, that the title of said mortgaged premises was in him, that he held a deed therefor, and

that he was the lawful owner of said premises at the commencement of said foreclosure suit, and still continued to be, and that he had not been made a party to such suit, and cautioned all persons against purchasing said premises, that if they did so, they must do it subject to his right to redeem the same, so that the said Sanford A. Hudson and the said Eliza A. Morgan, took and received said premises with the full knowledge and understanding that the title to said premises was in the said John R. Hodson, and that he had not been made a party to any of the proceedings in the said foreclosure suit, and at the date of the said deed from the said Sanford A. Hudson and wife, to the said Eliza A. Morgan, the said deed to the said John R. Hodson had long been recorded in the office of the Register of deeds for Rock county, as above stated."

"And he further states and shows that he by his agent, duly authorized for that purpose, on the 10th day of July, A. D. 1855, or thereabouts, tendered to the said Eliza A. Treat and David S. Treat, in lawful money of the United States, the sum of four hundred and twenty dollars, that being the full amount of said decree, together with the interest thereon and the costs and expenses in the premises, and requested the said Eliza A. Treat and David S. Treat to accept the same and re-deed the said premises, as they in equity and good conscience ought to do ; but to acccept the said sum of money, or to convey the said premises, the said Eliza A. Treat and David S. Treat, each and both refused to do. And further states that he then and there, by his said agent, forbade the said Eliza A. Treat and David S. Treat from making any improvement upon said premises, that he intended to institute proceedings to redeem the same, that no improvements at that time, had been made or put upon said premises ; but he is informed and believes that since that time, the said Eliza A. Treat and David S. Treat have erected or caused to be erected,

a dwelling house on said premises, and that they or their tenants are now occupying the same."

" And further states and shows that at the time of making said tender, and on the refusal as aforesaid, the said Eliza A. Treat and David S. Treat were informed that the money so tendered, as aforesaid, would remain in the hands of J. M. Haselton, of the city of Janesville, ready for them, and which they could have if they saw fit to comply with said request and demand; but to comply they have as yet entirely refused, and the said money still remains in the hands of the said J. M. Haselton ready to be delivered to the said Eliza A. Treat and David S. Treat and he here again offers to pay them the said sum of money, or so much thereof as may be due them for principal and interest upon the said two hundred and seventy dollars, and their reasonable expenses in the premises, or so much as this court shall deem just and proper, and he now here brings the said moneys into court for the said Eliza A. Treat and David S. Treat, in redemption of the said premises."

That the said deed from the said William Hodson and wife, and which bears date on the twenty-eighth day of September, A. D. 1851, was actually made, executed and delivered on the twenty-ninth day of September aforesaid instead of the twenty-eighth, as appears in the body of said deed; that said twenty-eighth was inserted as the date thereof through a mistake, whereas it should have been the twenty-ninth; that the said twenty-eighth day of September, A. D. 1851, was the Holy Sabbath, and he avers that Monday, the twenty-ninth day of said September was the day the said premises were sold, and the day the said deed was executed and delivered as aforesaid, and that the certificate of acknowledgement to said deed is correctly dated as of the twenty-ninth day of September, A. D. 1851; and prays that the deed may be re-formed accordingly; alleges that the defendants

refuse to permit the complainant to redeem, and to re-convey the premises. The bill prays that the complainant may redeem, and that the defendants convey the premises upon payment by the complainant, of the amount of the purchase money, with interest and reasonable expenses, and for general relief.

The defendants answered, admitting the execution of the mortgage by William Hodson and Sarah his wife, at the time and for the amount set forth in the bill. They deny, on information and belief, that subsequent to the mortgage, on the 29th day of September, 1851, or at any other time, the said William Hodson and wife made, executed, or delivered to said complainant a deed of said premises; and deny that such deed was duly recorded as alleged in the bill.

And further answering say, that they are informed and believe, and therefore charge the truth to be, that if any such deed was made and executed by the said William Hodson to the said complainant of said premises, as set forth in said bill, that the same was made without consideration, and for the purpose of covering up the property of the said William Hodson, and placing the same beyond the reach of his creditors; and for the purpose of cheating and defrauding his creditors; and that said complainant was a party to such fraudulent transactions, and had full knowledge of the object and purpose of said William Hodson as above set forth; and further aver, that such deed was made secretly, and the making and execution was kept secret with the intention and purpose on the part of the said complainant and the said William Hodson, to keep the same from the knowledge of the said Eliza A. Morgan, for the purpose of preventing a full and complete foreclosure of her said mortgage, and for the purpose of preventing a good and perfect title passing on and by virtue of the foreclosure of said mortgage to the person who might purchase the said premises at the sale ordered on the foreclosure

of said mortgage, and that said deed was in fact never executed or delivered until after the bill was filed by the said Eliza A. Morgan to foreclose her said mortgage, nor until after said mortgaged premises were sold on the foreclosure of said mortgage, as hereinafter and in said bill stated.

The answer admits the proceedings for foreclosure, the final decree, and the sale of said premises under said decree to said Sanford A. Hudson, and the deed of the same to him by the commissioner.

The defendants deny, that Sanford A. Hudson attended said sale for the purpose of protecting the interest of the said Eliza A. Morgan, or as her solicitor with the full understanding or agreement between the said Eliza A. Morgan and the said Sanford A. Hudson, that he should attend such sale and purchase the said premises in his own name, and if the said Eliza A. Morgan became convinced that the title thereto was perfect, she, the said Eliza A. Morgan, was to receive the deed of the said property instead of the money therefor as the proceeds of such sale as aforesaid, or that the said premises were sold at such sale for much less than their real value, or that the said Sanford A. Hudson took said deed in payment or satisfaction of said note and mortgage, but admit that no money was paid over to the said William Hodson or the said Eliza A. Morgan on the account of such sale, but deny that the said Sanford A. Hudson in purchasing said property, taking said deed, or recording the same, acted as the mere agent or trustee of the said Eliza A. Morgan, and deny that said Sanford A. Hudson retained such deed and title in his own name until the said Eliza A. Morgan could become satisfied that the title to said property was good, and further deny that the said Eliza A. Morgan ever had any doubt as to the title made by said foreclosure of said mortgage, and sale, and conveyance of said premises, as aforesaid, being good and perfect. But admit that on the 22d day of July, A. D. 1853,

the said Sanford A. Hudson and Sarah Hudson, his wife, made, and executed, and delivered under their hands and seals to the said Eliza A. Morgan, the said deed, a copy of which is set forth in said bill, and admit that the only consideration that was paid or that passed for either of the sales last mentioned, was the two hundred and seventy dollars allowed on the note and mortgage aforesaid, as the amount due thereon, except as hereinafter stated.

But they allege that said Sandford A. Hudson attended said sale for the purpose of purchasing said premises for himself and for his own use and benefit, in case no other person should bid for said premises a sum sufficient to pay the said Eliza A. Morgan the amount due to her on said note and mortgage, as the same was computed and decreed to her for principal and interest, together with the costs and expenses attending said foreclosure of said mortgage and the sale of said premises thereon, and that it was understood and agreed between the said Eliza A. Morgan and the said Sanford A. Hudson, that in case he bid off said premises for a less amount than the sum due her on said decree, together with the costs and expenses of said foreclosure and sale, he, the said Sanford A. Hudson, should pay to the said Eliza A. Morgan, in money the full amount due her on said decree for principal and interest up to the time of said sale, cancel his demand and bill for services as solicitor in said foreclosure suit, and pay such other costs and expenses as had been incurred therein.

That in pursuance of such understanding and agreement, the said Sanford A. Hudson attended said sale ; that the said William Hodson also attended said sale, and bid for said premises a sufficient amount to pay said Eliza A. Morgan the sum due her on said decree, together with the costs and expenses of said foreclosure and sale, and that said premises were thereupon struck off to the said William Hodson, and a deed in proper form made and duly executed, and tendered

by the said commissioners to the said William Hodson, but the said William Hodson refused to receive said deed and pay the amount of his bid for the said premises ; whereupon the said commissioner again put said premises up for sale, and the said Sanford A. Hudson bid for the same the sum of two hundred and seventy dollars, there being no higher bid for said premises, the same were struck off and sold by said commissioner to the said Sanford A. Hudson for that sum, and said premises were duly conveyed by said commissioner to said Sanford A. Hudson, as stated in said bill; and these defendants are informed and believe, and therefore state and aver that the said Sanford A. Hudson, immediately after he had purchased said premises as aforesaid, deposited in a bank at Janesville aforesaid, the amount due the said Eliza A. Morgan on said decree for principal and interest, and kept the same in said bank for a long period of time, ready to be paid to the said Eliza A. Morgan whenever she should call for the same; that in the meantime the said Sanford A. Hudson offered the said Eliza A. Morgan, through her agent, A. M. Carrier, that if she, the said Eliza A. Morgan, preferred, he, the said Sanford A. Hudson, would sell the said premises to the said Eliza A. Morgan for the amount for which he had bought the same, and convey the same to her instead of paying her the money, if she, the said Eliza A. Morgan, would pay to the said Sanford a Hudson his fees as solicitor, together with the costs and expenses attending said foreclosure and sale ; that the said Eliza A. Morgan, after considering said proposition about two weeks, finally decided to take said premises upon the terms thus offered, whereupon afterwards the said Sanford A. Hudson and wife conveyed the said premises to the said Eliza A. Morgan by deed, bearing date on the 23d day of July, A. D. 1853.

They deny that at the commencement of the said suit for the foreclosure of the said mortgage, the legal or equitable

title to the said mortgaged premises was in the said complainant, or that he was or still is the owner in fee-simple thereof, and these defendants aver that he neglected to cause a record of said pretended deed from the said William Hodson to said complainant, to be made for the purpose of carrying out the fraudulent intent aforesaid; and deny any knowledge or information of any deed of William Hodson and wife to said complainant until long after the premises had been conveyed by S. A. Hudson to said Eliza A. Morgan.

The defendants also deny that any notice of the complainant's title was given at the sale, by proclamation or in any other manner, or that the said S. A. Hudson or the said Eliza took the title to said premises with any notice of the claim of title by the complainant; deny that said complainant, by his agent duly authorized or otherwise, on the tenth day of July, A. D. 1855, or thereabouts, or at any other time, tendered to the said Eliza A. Treat and David S. Treat, or either of them, in lawful money of the United States, the sum of four hundred and twenty dollars, or any other sum; and deny that that is or was the full amount of said decree with interest thereon and the costs and expenses in the premises, or requested the said Eliza A. Treat and David S. Treat, or either of them, to accept the same, or re-deed said premises to said complainant; and deny that said complainant, by his said agent, or otherwise, forbid the said Eliza A. Treat and David S. Treat, or either of them, from making any improvements on said premises, or that said complainant intended to institute proceedings to redeem the same; and deny that no improvements had at that time been made, but aver that improvements to a considerable amount had then been made; admit that since the 10th day of July, 1855, they have erected a dwelling house on said premises, and other improvements to the value of six hundred dollars; deny that the said pretended deed of William Hodson and wife to John R. Hodson was actually

made on the 29th of September, 1851 ; and deny any mistake in said date of said deed, and that the certificate of acknowledgement thereon is correctly dated as of the 29th day of September ; and deny all right or equity of redemption.

General replication.

The cause being at issue, came on for hearing at the February term of the Rock circuit, 1857. On the trial, the plaintiff produced in evidence the record of the foreclosure suit, and also proved by J. N. Corson that on Monday, the 29th of September, 1851, he was a justice of the peace for the county of Rock, and that on that day he took the acknowledgment of the deed of William Hodson and wife to John R. Hodson, and that they signed and delivered it on that day. A copy of the deed was also produced, the acknowledgment of which bore date the 29th of September, 1851. The complainant's counsel then offered in evidence the book of deeds, duly authenticated by the register, exhibiting the record of said deed, but was objected to and rejected by the court.

The complainant also called William R. Hodson, who testified that the deed was executed on Monday, the 29th day of September, 1851. Witness testified that he was present at the mortgage sale, attended as the agent of the complainant, and distinctly told all the parties that the complainant was the owner of the premises, and that whoever bought must buy subject to his fee-simple right and his right to redeem. Mr. Noggle also gave similar notice as agent for the complainant. In consequence of this notice persons refused to bid. It was talked about among all the parties.

"On the 10th of July, 1855, I made tender to Treat and wife of $420 00 in American gold; I first tendered to Mrs. Treat and then to Mr. Treat, the defendants. The tender was to pay the amount due and interest on the foreclosure; I requested them to take the money on behalf of John R. Hod-

son, and I made the tender as his agent; I so stated to them; I meant the foreclosure suit of Eliza A. Morgan against myself, to redeem the premises sold under mortgage given to Eliza A. Morgan; I asked them to restore the property to John R. Hodson, to restore possession; my memory don't serve me as to the words; they refused to take the money; I then forbid them, as the agent of John, to make any improvements on the property in dispute; there were then some stone on the premises, symptoms of improvement, and I thought proper to give them notice not to make any improvements; I don't know that any thing further was said; I notified them that a bill would be filed to redeem the property; I don't know as I requested them to deed the property to John, but William L. Mitchell did, he was present acting with me; they refused Mitchell's request; Mitchell went with me for John; when they refused to receive the money, they were notified that it would be placed in the hands of J. M. Haselton, and remain in tender for them to take at any time when they would deed to John; the money was, on the same day, placed in the hands of J. M. Haselton; the same money; I computed the principal and interest at 25 per cent., and made the tender without regard to costs of foreclosure; I requested them to deed the property to my son John R. Hodson. At the time of sale under decree, the premises were worth about $1,000; I can't tell; they are now worth without improvements about $3,000.

There was an extended and minute cross-examination of the witness, the design of which was to show that the conveyance by William to John R. Hodson was made to defraud the creditors of the former, as well as to hinder and delay the defendants in the foreclosure of their mortgage, but nothing appears to have been elicited to affect the legal questions presented by the case. William Mitchell, also testified to the tender, and to the forbidding of making any improvements

on the premises, and that the tender would be kept good in the hands of Haselton.

Jared M. Haselton testified that the amount of the tender, $420 00, was deposited with him in trust for Treat and wife, whenever they would receive it and convey the premises, and he had always been ready to pay it when required.

Moses R. Pritchard, was present at the sale, and testified that William Hodson was there, and that it was given out by him that John R. Hodson had a deed of the premises.

Sanford A. Hudson, testified that he was the solicitor who conducted the foreclosure suit; was present at the sale; before the property was struck off, William Hodson stated that John R. Hodson had a deed of said block two. He drew the bill. John R. was not a party to it. First heard that John R. owned the property on the day of sale, after the bidding had commenced. William Hodson did not exhibit a deed. "I bid off the property for myself, and told Miss Morgan that she could have the money or the land; she decided I understood to take the money. I put the money in bank for her; had it two months; she finally concluded to take the land, some two months after the sale.

On the part of the defendants, testimony was offered to discredit the witness, William Hodson, in various forms, but it is unnecessary to insert it, as it has no bearing upon the points adjudicated.

The circuit court dismissed the bill, and complainant appealed.

*Case, Sleeper & Knowlton,* for the appellant.

*Bennet, Sloan & Patten,* for the respondents.

*By the Court,* SMITH, J.   This bill was filed by the complainant to redeem the premises described therein, from a mortgage executed by William Hodson to the complainants. The plaintiff claims as a purchaser subsequent to the mortgage.   The facts in the case are substantially as follows :

On the 21st day of November, 1850, William Hodson and wife executed and delivered to the defendant, Eliza A. Morgan, now the wife of the defendant, David S. Treat, a mortgage for the premises described in the complaint, which was recorded on the day of its date.  On the 29th day of September, 1851, and before the mortgage was due, the said William Hodson and wife executed and delivered to the complainant, his son, a warranty deed of the mortgaged premises, which was recorded in the register's office on the 10th day of February, 1853.   On the 28th day of January, 1852, the defendant, Eliza A. Morgan, now Eliza A. Treat, by S. A. Hudson, her solicitor, filed her bill of foreclosure, in the circuit court of Rock county, making parties thereto such persons as appeared of record to have an interest in the said premises, but the present complainant was not made a party ; and afterwards, on the 28th day of September, 1852, a decree of foreclosure and sale was made in the usual form.   On the 16th day of December, 1852, the mortgaged premises were sold under and by virtue of the decree; and were bid off by the said S. A. Hudson, the solicitor for the complainant in said suit, for the sum of $270, a sum insufficient to satisfy the decree, interest and costs.   At the sale, William A. Hodson appeared as the agent of the complainant, and also David Noggle, Esq., and for, and on his behalf, gave public notice of his interest in said premises, that he held the same by virtue of a warranty deed ; that he had not been made a party to the suit, and that all who purchased must purchase subject to his right of

redemption. Notwithstanding this notice, the sale went on, and the premises were bid off as before mentioned.

The only question presented for our consideration in this case is: Did the purchaser at the foreclosure sale purchase subject to the right of the complainant to redeem?

There can be no doubt that John R. Hodson took, by his deed from William Hodson and wife, the fee in the premises, subject to the mortgage of the defendant. He had the right at the date of his deed, or at least as soon thereafter as the mortgage should become due, to discharge the incumbrance by paying off the mortgage. After the mortgage had become due, his right of redemption continued until it should be foreclosed in equity, or should lapse by time. It could not be foreclosed by any proceedings in equity to which he was not a party. His title might possibly be superceded by another registered conveyance prior to the registry of his. Perhaps a bona fide purchaser at the foreclosure sale, without notice, would hold in preference to the complainant's unrecorded deed. But the purchaser in this case had notice of the complainant's interest, and therefore that question does not arise. His equity of redemption had not been foreclosed in equity, for he was not a party, and authority need not be cited to show, that a purchaser of the fee subsequent to the mortgage is not barred of his equity of redemption by a decree of foreclosure, unless he is a party to the suit. It will not be contended that his equity of redemption was barred by lapse of time. How then, or in what manner, was his right of redemption cut off?

It is contended that this sale by William Hodson to John R. Hodson, was fraudulent as to the defendant, being made to hinder and delay her in the foreclosure of her mortgage. But this is simply impossible. It is not possible for the mortgagor to defraud his mortgagee by a conveyance of the premises. The mortgage is registered, and will hold in spite of all manner of conveyances by the mortgagor. The same re-

marks apply to subsequent purchasers. They must of necessity purchase subject to the mortgage, and the interests of the mortgagee can, by no possible contrivance be affected thereby.

There was therefore no fraud in the sale to the complainant. Such transactions are of every day occurrence. The interest acquired by the complainant is one recognized by law, and is entitled to the protection of the law.

It is contended that the conveyance from William to John R. Hodson was fraudulent and void as to the creditors of the former. If it were so, it was not void as to the defendant. Her interest in the lands was secure. If, however, it was the design of William and John R. to defraud the creditors of the former, it is somewhat singular that the deed was not recorded, and that William remained the ostensible owner all the while. But this discussion is fruitless, for it has no application to the case.

But it is contended, " that to sustain the right of the complainant in this case to redeem, would place it in the power of a crafty mortgagor forever to prevent the foreclosure of his mortgage." This is the view which the circuit judge took of the case, and on this view alone he appears to have based his decree dismissing the bill. We think this is a mistaken view of the case. This complainant purchased before the mortgage was due, and hence before the commencement of the suit. There could be but one holder of the fee, or equity of redemption at the commencement of the suit, and he should be made a party if known. Of course any conveyance by the mortgagor after the commencement of the suit, would be made *lis pendens*, and with notice to the purchaser. There would therefore be no room for a mortgagor, however crafty or however numerous his creditors, to prevent or prolong the foreclosure of the mortgage. It is not pretended that the mortgagee must go hunting up grantees of the equity of redemption, up to the time of sale. But the equity of redemp-

tion was in the complainant at the time of the commencement of the suit. There was no law requiring him to put his deed on record, or that forfeited his title in case he did not.

Perhaps the complainant might have been estopped from asserting his title had he stood by and allowed the sale to be consummated without notice of his interest. But I have failed to discover, nor have we been cited to any law, authority, or rule of practice, which declares that the equity of redemption in the purchaser from the mortgagor, acquired before the mortgage is due, is extinguished by a decree of foreclosure to which he was not a party, because his deed was not on record at the time of the commencement of the suit, or of the decree. Such we do not believe to be the law.

We think the notice given at the sale was sufficient to all parties, to the defendant through her solicitor, if the purchase was for her benefit; to Hodson personally, if for his. It might operate to delay the foreclosure; but this is always the case when new and essential parties are discovered.

The complainant not having been made a party to the suit for the foreclosure of the mortgage, his equity of redemption was not thereby extinguished, and for aught that appears in the pleadings and proofs in this case, that equity still remaining in the complainant, the court below erred in dismissing the bill.

The judgment of the court below must therefore be reversed, and the cause remanded to be further proceeded in, according to this opinion.