Hoyt vs. Jones.

## HOYT VS. JONES.

RECORDING ACT. (1) *Effect of judgment against grantees whose deeds are of record, upon one claiming under them by unrecorded deed.* (2) *Who is a purchaser for value.* (3) *Pleading and proof in such cases.*
COSTS IN EJECTMENT. (4) *Abstract of Title.*

1. By a series of conveyances in due form and duly recorded, the legal title to land passed from X. through A. and B. to C.; and by unrecorded deeds it then passed from C. to D., and from D. to the plaintiff. X. then commenced suit against A. B. and C., neither D. nor the plaintiff being made a party thereto, and had judgment cancelling said recorded deeds, and adjudging the title to be in X. as against said defendants and all persons claiming under them after notice of *lis pendens* filed. Afterwards X. conveyed to Y. and he to defendant; and the deed to Y. was recorded *before* those from C. to D. and from D. to plaintiff. *Held*, in ejectment,

    (1.) That the judgment in favor of X. was a *public record*, of which all persons concerned were bound to take notice.

    (2.) That although such judgment did not of itself divest plaintiff's title, it had the full effect, as against all the world, of a deed of quitclaim from C. to X.

    (3.) That Y., being a subsequent purchaser, in good faith, for value, from X., without knowledge or notice of said unrecorded deeds, was protected against them by the recording act (R. S., ch. 86, sec. 25); and as to him, said prior unrecorded deeds were void.

    (4.) That defendant took a perfect title by his deed from Y.

2. Defendant advanced the agreed price of the land to X. before the latter brought his suit against A. B., and C.; and took a contract for the sale of the land, with an agreement that if X. failed to remove the cloud upon his title, the transaction should be regarded as a loan of money. After X. obtained his judgment, the parties treated the transaction as a sale of and payment for the land. *Held*, that defendant must be regarded as a purchaser for value.

3. In ejectment by the prior grantee of land against a subsequent purchaser whose deed is first recorded, the defendant is not bound to *plead*, nor in the first instance to *prove*, that his purchase was in good faith and for value; but may rely upon a mere assertion of paramount title with proof of the prior record of his deed. The burden is upon the plaintiff, in such a case, to show bad faith or want of consideration.

4. In ejectment, the expense of an abstract of title procured by the successful party is no part of the taxable costs.

5. The admission of an improper item in the taxation of costs in the court below, will not necessitate a reversal of the judgment in ejectment on an appeal therefrom; but, the judgment being affirmed upon the merits, a retaxation of the costs will be ordered, unless respondent remits the amount improperly allowed.

APPEAL from the Circuit Court for *Dodge* County.

This action was brought to recover a lot of land containing about one and one-fourth acres, being part of the northeast quarter of section five, in township thirteen north, of range fifteen east, in the county of Dodge; which lot is particularly described in the complaint by metes and bounds.

The complaint is in the usual form of complaints in actions to recover real property. The answer is, 1. The general denial. 2. Title to the demanded premises in the defendant. 3. The statute of limitations, by reason of the adverse possession, by the defendant and his grantors, of said premises for more than twenty years.

To maintain the issue on his part, the plaintiff read in evidence on the trial: 1. Two patents from the United States to Seymour Wilcox (who is the common source of title), conveying to him the said northeast quarter of said section five. Said patents are dated February 1st, 1843. 2. A warranty deed from Seymour Wilcox and wife to John Taylor, dated July 23d, 1851, and recorded July 24th, 1851, conveying a portion of said quarter section, including therein the premises in question in this suit. 3. A warranty deed of the same premises conveyed by Wilcox to Taylor, executed by John Taylor and wife to Milo Sykes, and dated July 23d, 1851, and recorded November 3d, 1851. 4. A deed of warranty from Milo Sykes and wife to Byron Sykes, of the same premises, dated November 17th, 1851, and recorded November 25th, 1851. 5. A deed of warranty of the same premises, executed by Byron Sykes and wife to Wallace Mygatt, dated April 16th, 1853, and recorded April 30th, 1853. 6. A warranty deed of the same premises, from Wallace Mygatt and wife to Edgar G.

Mygatt, dated July 15th, 1854, and recorded November 11th, 1868. 7. A quitclaim deed of the same premises, executed by Edgar G. Mygatt and wife to the plaintiff, dated September 10th, 1858, and recorded November 11th, 1868.

The chain of title under which the defendant claims is as follows: 1. A bond dated August 7th, 1856, executed by Seymour Wilcox to George Babcock, conditioned for the conveyance to Babcock of the lot in controversy in this action in two years, or afterwards at the option of Babcock, in case Wilcox should in the meantime obtain a perfect and undisputed title thereto; which bond also gave Babcock the possession of said premises. 2. A judgment and judgment roll in an action commenced in 1858 in the circuit court for Dodge county, by Seymour Wilcox against the above named John Taylor, Milo Sykes, Byron Sykes and Wallace Mygatt, for the purpose of obtaining, upon grounds stated in the complaint therein, the judgment of that court cancelling and annulling all the above mentioned conveyances from Wilcox to Taylor, from Taylor to Milo Sykes, from Milo Sykes to Byron Sykes, and from the latter to Wallace Mygatt; in which action each of the defendants therein was personally served with the process or summons, and such proceedings were afterwards had therein that the court gave judgment for the plaintiff, in and by which it was, amongst other things, adjudged and determined that the four several conveyances last above mentioned were void and of no effect, and the title to the premises described therein was by said judgment adjudged to be in the said Seymour Wilcox and not in the said Wallace Mygatt, and it was further adjudged that the said Seymour Wilcox have, hold and enjoy the said premises as against the said Wallace Mygatt and all persons claiming under him since the filing of the notice of the pendency of such action. Such notice was filed November 10th, 1858. The judgment is dated July 18th, 1859, and remains in full force, not reversed, vacated or modified. 3. A warranty deed of the premises claimed in the complaint in this action, executed by

Seymour Wilcox and wife to said George Babcock, in consideration of four hundred dollars, dated July 28th, 1862, and recorded June 14th, 1864.   4. A warranty deed of the premises last mentioned, executed by George Babcock and wife to the defendant, dated July 28th, 1868, and recorded January 14th, 1869, the consideration therefor being six hundred dollars.

It also appeared on the trial, that the premises in controversy had continued in the exclusive and uninterrupted possession of Wilcox, Babcock, and the defendant, respectively, under their several conveyances thereof, from 1843 to the time of the trial, and that neither Taylor nor any grantee under him, down to and including the plaintiff, ever had any possession thereof.

The action was tried by the court without a jury, and the court found the foregoing facts, together with some others not necessary to be stated, and rendered judgment for the defendant, for costs, and adjudging that the plaintiff take nothing by his suit.   From such judgment the plaintiff appealed to this court.

*E. Mariner* and *David S. Ordway*, for appellant, contended that the record of the judgment in favor of Wilcox in his action of ejectment against Taylor and others was improperly admitted in evidence in this action, the defendant herein having been the owner of the land before the commencement of such action, and not having been made a party thereto.

*Gillett & Pier*, for respondent.

The following opinion was filed at the January term, 1872.

Lyon, J.  The conveyances from Wilcox to Taylor, from Taylor to Milo Sykes, from him to Byron Sykes, and from the latter to Wallace Mygatt, were effectually " wiped out " by the judgment of July 18th, 1859.   From thenceforth those conveyances, and the record thereof, ceased to have any force or effect as evidence of title in the respective grantees therein named, or either of them, or as notice to subsequent purchasers from Wilcox.   The court which rendered that judgment had

jurisdiction of the subject matter thereof, and of the persons of the defendants named therein ; and it was adjudged that the foregoing conveyances were void and of no effect, and the title to the premises, or the lot in controversy in this action, was, by the terms of such judgment, confirmed in Seymour Wilcox. Instead of thus confirming the title thereto in Wilcox, had the judgment directed Wallace Mygatt to execute a release of the premises to Wilcox, and had such release been duly executed and recorded, obviously the effect would have been the same. That would merely have been the use of different means to accomplish the same end. In that case it would appear by the records, as it now appears, that Wilcox had a perfect record title to the premises when he conveyed the same to Babcock. It does not appear that either Wilcox or Babcock had any notice, actual or constructive, of the existence of the unrecorded conveyances from Wallace Mygatt to Edgar G. Mygatt, and from the latter to the plaintiff. Babcock was a purchaser of the premises from Wilcox in good faith, and for a valuable consideration. He was in the actual possession thereof under the bond previously executed to him by Wilcox, and after the same was conveyed to him he retained such actual possession by virtue of the conveyance. He also recorded such conveyance before the deeds to Edgar G. Mygatt and to plaintiff were recorded.

We see no good reason why, under these circumstances, Babcock did not take a perfect title to the premises in controversy. Suppose the plaintiff's claim of title was founded upon an unrecorded conveyance from Wilcox directly to Edgar G. Mygatt, or even directly to the plaintiff, of the existence of which Babcock had no notice when he took the conveyance from Wilcox. In such case there can be no doubt that Babcock would hold the premises under his recorded conveyance, by virtue of the recording act. R. S., ch. 86, sec. 25. We think the case as it stands involves the same principles — that there

is no substantial difference between the case supposed and the one presented by this record.

Our conclusion is, that the deeds to Edgar G. Mygatt and to the plaintiff, respectively, are void as against the subsequent conveyance to Babcock, which was first recorded; Babcock being a purchaser in good faith and for a valuable consideration. It necessarily follows that the conveyance of the premises, executed by Babcock to the defendant, vested a good title thereto in the defendant, and that the judgment of the circuit court was properly in his favor.

These views render it unnecessary to decide the other questions discussed in the arguments of the respective counsel, with a single exception. In adjusting the costs, the taxing officer allowed an item of sixty dollars for an abstract of title; and, on a review of the taxation, the circuit court, *pro forma*, approved the bill thus taxed, and allowed the item to remain therein. We do not think that the cost of an abstract of title is a taxable disbursement. The examination of the records for the purpose of ascertaining the state of the title seems to be the proper duty of the attorney, and if, for convenience, some other person is employed to perform such duty, we are aware of no statute which authorizes the expense thereof to be included in the taxed bill of costs. Unless, therefore, the defendant remits the amount of that item, there must be a retaxation at the cost of the defendant, and the objectionable item stricken out. But this does not work a reversal of the judgment.

*By the Court.* — Judgment affirmed.

The appellant moved for a rehearing, and his counsel, *Messrs. Mariner, Smith & Ordway*, contended that a judgment is operative only between parties and privies *pendente lite* and *post litem* (*Gray v. Schenck*, 4 Coms., 461; Story's Eq. Pl., Redf. ed., § 72); that to affect the title to land by a judgment, the owner of the land must be a party to the action (*Hodson v. Treat*, 7

Wis., 281; *Morse v. Cord*, 14 id., 217; *Green v. Dixon*, 9 id., 538; *Stark v. Brown*, 12 id., 572 ); that all men are presumed to know the law, and the judgment against Taylor and others was a public record, and whoever took a deed of the premises in question after the rendition of that judgment, is conclusively presumed to have known that if the title had passed out of Wallace Mygatt before that action was commenced, the true owner of the land was not bound by the judgment; that the judgment itself merely adjudges the title to be in Wilcox as against Wallace Mygatt and all persons claiming under him *since the filing of the notice of pendency of said action;* that the provisions of the registry law here relied on, being in derogation of the common law, must be strictly construed; that to hold the judgment as of like effect as a release from Wallace Mygatt, and as standing in place of a deed, is a wide departure from the terms of the law; that Wilcox was not a *purchaser* from Wallace Mygatt (2 L. C. in Eq., 1; *Jackson v. Dubois*, 4 Johns., 221; *Anderson v. Roberts*, 18 id., 515; *Dickerson v. Tillinghast*, 4 Paige, 222; *Thomas v. Kelsey*, 30 Barb., 268; 29 id., 505, 539 ); that he did not pay a *valuable consideration* (*Coddington v. Bay*, 20 Johns., 637; *Wright v. Douglass*, 10 Barb., 97; *Arnold v. Patrick*, 6 Paige, 310 ); that he did not have a conveyance in any sense in which that word is used, because the judgment did not attempt to pass the title, but merely to declare the true state of the title; that his conveyance, if any, was not first nor at any time duly recorded, (*Wood v. Chapin*, 3 Kern., 518; 4 Kent, 9th ed., 171 ); that Babcock was not a purchaser for value without notice; and that appellant should be permitted to show that· Wilcox and Babcock took with actual notice of appellant's deed.   Counsel further argued that the court, in the action of Wilcox against Taylor and others, had no jurisdiction of the subject matter, *i. e.*, of the title to the land in dispute, except so far as it had jurisdiction of the parties who had the title.   *Winborn v. Gorrell*, 3 Ired., 117; 9 Paige, 136.

The motion for a rehearing was denied, and the following opinion filed, at the June term, 1872.

Dixon, C. J.    Counsel for the plaintiff move for a rehearing of the question upon which this case has been decided, and state several well received and undoubtedly correct general propositions of law, which they claim have been violated in its decision.

There can be no doubt of the general correctness of the rule that the judgment of a court is only operative between parties and privies *pendente lite* and *post litem.*

Neither can it be questioned as the settled law of this state, generally applicable, that, in order to affect the title of land by the judgment of a court, the owner of the land must be made a party to the action by service, actual or statutory.

And in like manner it is not to be controverted as a well established general rule, that all men are presumed to know the law, and that no man will be heard to plead ignorance of it.

It is a proposition asserted in the former opinion, and necessary to the conclusion arrived at by the court, as well as that here contended for by counsel, that the judgment of the circuit court of July, 1859, was a public record, of which every man, grantee of Seymour Wilcox, who would invoke that record in aid of his title, must be held to know the contents.    There is no disagreement between the court and counsel on this proposition, and we entirely concur with them when they say that "this judgment is a *record,* and a record of as much solemnity as the recorded deed of all the parties to the action, and a record through which the defendant claims."    In fact, it is provided by statute that all judgments, decrees and orders rendered or made by any court affecting the title to land, may be recorded in the office of the register of deeds in like manner and with like effect as deeds or other instruments of conveyance.    Laws of 1859, ch. 157, sec. 1; 2 Tay. Stats., 1149, § 35.

The main question presented on this argument seems to be,

whether the two propositions first above laid down are to be taken as rules of law without any exception; or whether under certain circumstances exceptions exist, and, if so, whether the judgment in question does not constitute one of them. Another question arises upon the language of the judgment, and is, whether it should be so construed as to save the rights of a purchaser under a prior unrecorded deed, supposing it to have been otherwise competent, by virtue of the judgment to which he was not a party and of a subsequent conveyance to a *bona fide* purchaser for value, to have avoided his deed still unrecorded at the time such subsequent conveyance was put on record, and in that way to have cut off or defeated his title.

It is a conceded fact that the title was out of Wallace Mygatt and in Edgar G. Mygatt by the deed dated July 15, 1854, but which deed was not recorded until November 11th, 1868. Edgar G. Mygatt conveyed to the plaintiff in this action by deed dated September 10th, 1858, also not recorded until November 11th, 1868. The suit in which Wilcox recovered the judgment was commenced August 13th, 1858. Wallace Mygatt, the person appearing of record as the owner of the land at the time the suit was commenced and the judgment obtained, was a party to the suit, but neither Edgar G. Mygatt nor the plaintiff, in whom the title then was, were such parties. The presumption is, that neither Edgar G. Mygatt's former title nor the plaintiff's then present one were known to Wilcox, the plaintiff in the action, and hence neither of them was made a party to it.

Counsel lay hold of the facts that the plaintiff was in truth the owner, and was not a party to the suit; and then applying the rules of law first above stated, insist that the judgment had no effect whatever upon the plaintiff's title. By itself considered, and looking upon what may have been the mere operation of the judgment as between the plaintiff in it, Wilcox, and the plaintiff in this action, *Hoyt*, this position may be correct. Had *Hoyt* then at once brought ejectment against Wilcox, he might

have prevailed on the strength of the title conveyed by Wallace
Mygatt to Edgar G. Mygatt and by the latter to himself, al-
though both the deeds so executed were still unrecorded. If,
immediately after the rendition of the judgment, or at any time
before Wilcox had conveyed to a purchaser for value without
notice whose deed was recorded, *Hoyt* had recorded the two
deeds, it may still be that his title would have been saved. It
seems to be true, as counsel say, that Wilcox, with the judg-
ment in his favor annulling the several recorded conveyances
from himself to Taylor, Taylor to Milo Sykes and thus on down
to and including the conveyance to Wallace Mygatt, did not
stand in the relation of a subsequent purchaser in good faith
and for a valuable consideration whose first recorded convey-
ance is protected and made operative by the statute. The judg-
ment did not, therefore, operate *per se* to bar or extinguish the
title of *Hoyt.*

But it is not alone with reference to the sole or separate
operation of the judgment as between the parties to it, or
limited to such parties, that the question is now to be exam-
ined. Other facts and circumstances have since intervened,
other parties have become interested, and other rights accrued,
which involve the application of other rules and principles of
law than those which merely concern the effect of the judgment
according to the general limitation restricting it to parties and
privies. It is in connection with the registry law and its effect
upon land titles that the operation of the judgment must now
also be considered. By omitting to record his deeds (by this I
mean both the deed to and that from Edgar G. Mygatt), *Hoyt,*
by acquiescence and silent admission at least, represented to
the world, or to any person having an interest or proposing by
purchase or otherwise to become interested in the title to the
land, and who had no actual knowledge to the contrary, that
Wallace Mygatt was the true and lawful owner of it. By
omitting to record his deeds, he tacitly asserted and became
party to the representation made by the record with respect to

Wallace Mygatt's title and ownership. Withholding from the record all evidence of its untruthfulness, which evidence was in his own exclusive possession, he adopted the language of the record, and held *Wallace Mygatt* out as the owner, for all legal purposes of creating or confirming the title of a subsequent purchaser in good faith and for value, pursuant to the registry law. That law is enacted, and the registry or record of conveyances kept, for the very purpose of giving exact and reliable information of the titles to lands to all persons having business with or in any manner pecuniarily concerned in such titles. One who keeps the evidence of his own title off the record, and thus conceals it from the public and parties interested, tacitly consents that the record shall speak for him, and that whatever it says shall be true so far as the rights of a subsequent purchaser of the kind mentioned in the statute, and who has complied with its conditions, may be involved. I have expressed my views quite fully as to the effect of the registry, the duty of owners to record their conveyances, and the rights of the *bona fide* purchaser for value, in *Wickes v. Lake*, 25 Wis., 84, 87, 88 and 94 and following. Keeping his own deeds off the record and concealed in his pocket, *Hoyt*, in effect, assented and asserted that Wallace Mygatt was in fact what the record showed him to be, the owner of the land; so that, *Hoyt's* deeds being still unrecorded, whatever subsequently befell Wallace Mygatt's title or ownership, whether the same was adjudged worthless and void at the suit of some third person who afterwards conveyed, or whether Wallace Mygatt himself conveyed in such manner that the title came to the hands of a subsequent purchaser whose case is within and whose rights will be enforced and protected under the registry law — to all such proceedings *Hoyt* must, in favor of such purchaser, be looked upon and considered as having given his assent. The question must be regarded as if *Hoyt* had said to Wilcox, " Wallace Mygatt has the title, litigate with him," and then had given no further information until the suit was ended, Wallace Mygatt's title an-

nulled, and the ownership decreed to be in Wilcox, and Wilcox had conveyed to a purchaser for value without notice, who had recorded his deed. Such, we think, must be deemed the conjoint operation of the judgment and the registry law, under the facts and circumstances disclosed by the bill of exceptions in this case.

And here come in with very great power the rules of law invoked by counsel, that every man is presumed to know the law, and that the judgment was a public record of equal solemnity with a recorded deed, of which every person interested in the title of the land was bound to take notice. These rules apply as well to the plaintiff in this action as to the defendant. The plaintiff, *Hoyt*, was bound to know that by his laches he was suffering the title of record of his grantors, the chain which connected him with the source and alone gave him an estate in the land, to be broken and sundered, and the evidence of its formerly having existed to be blotted out and expunged from the public records of titles. The effect of the judgment of a court of competent jurisdiction setting aside and nullifying a conveyance of record of land is no less than if such record was actually effaced from the register's books. It becomes as if no such conveyance had ever been executed, or ever been recorded. If one were to imagine, or if such were the mode of proceeding prescribed by law, that, instead of signing the judgment, the books of the register were to be brought into court, and the record there obliterated by the judicial hand or under the direction of the judge, the act would be in no respect more efficacious or enduring in its results than it is by the method now pursued by law. *Hoyt* was bound to take notice of the judgment, and to know its effect in law upon the recorded evidence of title as between the parties to it, ostensibly the true owners and as it would be looked upon by a stranger negotiating for and purchasing the land of Wilcox after the title of record had thus been restored to him, and he had again become invested with the apparent ownership of the land. It is a presumption

also that *Hoyt* knew the operation of the registry law upon the title in the hands of a subsequent *bona fide* purchaser for value from the apparent owner, who should cause his deed to be first duly recorded. It is the universal course of business and of transactions in the buying and selling of real estate, for people to examine and be governed by the records. Prudent men, when about to purchase, always examine the records, to ascertain if the title be in their vendor, and whether it is incumbered, and if they find the vendor has the title and it is unincumbered, they imagine themselves secure, and do not hesitate to close the bargain and pay the consideration agreed upon. It must be presumed that every one, the plaintiff *Hoyt* not excepted, knows this course of business, and that he was well aware of the danger in which he was placing such purchasers by his omission to record his deeds, if they should buy, paying a valuable consideration, without notice of his adverse claim, and he should afterwards be permitted to bring it forward to defeat their title. In every view, therefore, the rules insisted upon by counsel seem to make most strongly against their client, and effectually to close the door upon him and upon the title which he attempts to assert. It is in the nature, therefore, of an estoppel *in pais* growing out of the laches and wrongful omission of *Hoyt*, and of the provisions of the registry law, that he is now precluded, as against a subsequent purchaser in good faith for value whose deed was first recorded, from questioning the validity of the judgment or from taking any advantage of the fact that the true owner of the land was not made a party to the action. It would be utterly impossible ever to settle controverted questions of title requiring the interposition of equity and the rescinding or setting aside of conveyances, if this were not so. It would be utterly impossible, in like manner, ever to give a sure and indefeasible title through a judicial sale and conveyance. If owners will omit to record their deeds, and will keep their titles concealed, hoping thereby to bring others into difficulty

and peril, it is time they were made to understand that the blow intended for the title of another may recoil upon and break and destroy their own.

Holding the present plaintiff, therefore, concluded or estopped under the circumstances by the judgment, the effect of the judgment and of the subsequent conveyance was, as stated in the former opinion, as if Wallace Mygatt had conveyed to Wilcox, and Wilcox to Babcock, who purchased, paying a valuable consideration, without notice of any defect in or adverse claim to the title; both which conveyances were recorded before the recording of the prior deeds of the plaintiff. The effect of the judgment was even greater and more to the disadvantage of the plaintiff than that. It was to strike out and extinguish the conveyances under which Wallace Mygatt claimed, and to show that he had no valid title which he could transfer to the plaintiff. It left the title of the plaintiff apparently without chain or connection with the original, but beginning with a party who had no right, legal or equitable, to the land.

Enough has already been said, perhaps, to indicate our views as to the position of counsel that the subsequent purchaser from Wilcox was bound to know or to ascertain at his peril that the true owner of the land was a party to the action by Wilcox to set aside the deeds. He was undoubtedly bound to know that fact so far as the records disclosed it. In purchasing of Wilcox it was the right and privilege of the purchaser, given and encouraged by law, to indulge in the same presumption as to the completeness and verity of the records as had been indulged by Wilcox, and rightly, in the commencement and prosecution of his suit. The records informed the purchaser, as they had previously informed Wilcox, that the owner of the land had been made a party to the suit, and was concluded by the judgment.

And this answers the second question or objection presented by the argument, arising upon the language of the judgment,

which, after having declared the several deeds void and of no effect, and the title to the premises therein described to be in Wilcox, adjudged "that the said Seymour Wilcox should have, hold and enjoy the said premises as against the said Wallace Mygatt and all persons claiming under him, since the filing of notice of said action, November 10th, 1858." It being presumed in favor of the subsequent *bona fide* purchaser for value, who consummated his purchase on the faith of the information imparted by the records, that Wallace Mygatt was the holder of the title under the deeds declared void by the judgment, it would follow as of course, that such purchaser would be protected as against any unrecorded title claimed through or under Wallace Mygatt, of which the purchaser had no actual notice.

With respect to the point that the court was without jurisdiction of the subject matter, because the outstanding title of the land was in the plaintiff or in his grantor, Edgar G. Mygatt, at the commencement of the action, neither of whom were made parties to it, we make the additional observation, that, under the registry law and so far as it may be necessary to protect the titles of subsequent purchasers in good faith who are within it, it is sufficient if the court has *apparent* jurisdiction to operate upon the title. It is by the title as it *appears* of record that purchasers and suitors, having no different knowledge or information, are governed; and it is no more necessary, for the purpose of the title so shown by the record, that the court should lay its hand upon the *actual* title in order that a subsequent purchaser under the judgment may be protected, than it is that the grantor in the common case should have actual seisin and title of the land to protect the purchaser under his conveyance. The fact is, the grantor has no title, and yet, by default of the true owner to record his deed, the registry law operates to give the grantee a good title. So it may be, technically, with respect to the jurisdiction of the court, and yet its judgment operates, or may operate, under the registry law, to secure a valid title

to the purchaser who afterwards buys on the faith of it, the true owner keeping all evidence and knowledge of his para·mount right still covered up and concealed.

It is said that Babcock was not a purchaser for a valuable consideration. We think he was. He converted what was before a loan of money into a payment for the land, and took and recorded his deed.

It is furthermore said that the plaintiff should have the opportunity of showing that Babcock purchased with actual knowledge of his, plaintiff's, deed. The plaintiff had that opportunity on the trial. Being himself the party in the wrong, by omitting to record his deed, the burden was upon him to show the fact, if it existed. Fraud or bad faith on the part of the subsequent purchaser, under such circumstances, will not be presumed. The defendant denied the title of the plaintiff, and likewise pleaded title in himself. He proved both issues when, with the other evidence, he produced the deed from Wilcox to Babcock, which was recorded before the deeds under which the plaintiff claimed, and then introduced the deed from Babcock to himself. It was then incumbent on the plaintiff to impeach the conveyance from Wilcox to Babcock, if he could do so on the ground of bad faith in, or the want of a valuable consideration paid by, Babcock. The defendant was not required to plead either the good faith of Babcock or that he paid a valuable consideration for the land. Bad faith, or notice of the plaintiff's adverse title, or a want of consideration which would defeat the conveyance to Babcock, were affirmative facts, of which, if the plaintiff would have had the advantage, he was required to give evidence at the trial. *Wood v. Chapin*, 13 N. Y., 509; *Shotwell v. Harrison*, 22 Mich., 410. In the latter case, the majority of the court make a distinction between the proof of notice and the proof of payment of valuable consideration, holding as to the former that the burden rests upon the party asserting title under the unrecorded deed, but that as to the latter, the subsequent purchaser whose deed

is first recorded is required to give affirmative evidence in addition to that furnished by the record and the recitals in the deed. The reasons for this distinction are not apparent to my mind, and I am strongly inclined to concur in the views expressed by Chief Justice CAMPBELL, who dissented, and who seems to be clearly sustained by the decisions of the courts of New York.

*By the Court.*— Motion for rehearing denied.