### BUSH *against* GOLDEN and others.

*A* and *B*, being owners, as tenants in common, of a certain mill, dam and pond of water, entered into a parol agreement to enlarge the dam, principally for the purpose of furnishing the parties a good way over it, to lands owned by them in severalty, lying upon opposite sides of the stream on which the dam stood.    The dam was enlarged accordingly, at an expense of 210 dollars, of which *A* paid 200, and *B* 10, dollars; and was used by the parties, in conformity with such agreement.    During this period, *B* mortgaged his interest in the common property to *C* and *D*, to secure certain debts which he owed them respectively ; they acting in good faith, without notice of the agreement between *A* and *B*.    The mortgaged premises are of less value than the amount of the mortgage debts, which remain unpaid ; and a reservation of a right of way over the dam, to *A*, on a sale of the common estate, would depress the price of the whole 200 dollars.    On a bill in chancery, afterwards brought by *A*, against *B*, *C* and *D*, seeking such a reservation, it was held, 1. that *A*, having no record title to the way in question, had but an equitable title thereto ; 2. that the agreement between *A* and *B*, though

*Fairfield,*
June, 1846.

Bush
*v.*
Golden.

executed, did not affect the rights of *C* and *D,* who were *bona fide* purchasers of the legal title, for valuable consideration, without notice of any adverse claim ; 3. that as against such persons, a court of equity would not interfere, in favour of one who had but an equitable title.

The taking of a deed, with knowledge of a prior conveyance to another person, unrecorded, is deemed a fraud upon him ; and this will not be presumed, but must be shown, by the party seeking to avail himself of it.

THIS was a bill in chancery, for an account, for the reservation of a right of way in certain estate held in common, and a sale of such estate and a division of the proceeds, subject to such reservation. The case, as found by the committee, was as follows.

*Justus L. Bush* and *Ephraim Golden,* from the 15th of *March* 1830, until the death of the former, owned in fee-simple a certain mill, dam and pond of water, particularly described in the bill. During this period, *Bush* owned a tract of land, called the *Point,* lying *Easterly* of the mill-pond, and extending *Southerly* to the waters of *Long-Island Sound.* He also owned two other parcels of land, one lying *Westerly* of the mill, and adjoining thereto, with the dwelling-house and other buildings thereon, being his homestead ; the other situated *Southerly* of the mill, called the *Landing,* having for a long time been used as a landing. On the 16th of *May* 1835, *Bush* sold and conveyed to *Golden,* about 70 rods of the land, called the *Point ;* and *Golden* immediately thereafter took possession of the land so conveyed to him, and erected a dwelling-house thereon, in which he has ever since lived.

*Bush,* for more than forty years previous to his death, owned and held one undivided half of the mill, dam and pond, with the appurtenances ; and during all that time, was accustomed to cross over the dam on foot, from his land lying *Westerly* of the pond, to and from his land on the *Point,* which was generally used for pasturing cattle, and occasionally for tillage. Before the dam was widened and enlarged, in the manner soon to be stated, he was accustomed to drive his cattle from his lands lying *Westerly* of the pond, to and from his land on the *Point,* over the creek *Southerly* of the mill ; and occasionally, when the tide was out, passed over there with carts, though the access was difficult, on account of the steep banks of the creek ; but he usually passed

with carts to and from the land on the *Point,* over the land of *William H. Mead,* by his permission, and thence to the highway.

In the year 1835, *Bush* and *Golden* agreed to enlarge and widen the dam, which they, in that year and the two succeeding years, greatly enlarged and widened. No agreement was made between them, as to the proportion which each should bear in the expense of this improvement ; nor was there any agreement between them, that either should be entitled to recover of the other for what he might contribute thereto over one half of such expense. A small part of the work was for the benefit of both parties, as tenants in common ; but the greater part was agreed by them to be done, and was by them done, not for their benefit as tenants in common, but for the purpose of furnishing to *Bush* a good way from the mill and the *Landing,* and his other land lying *Westerly* of the pond and creek, to and from his land lying *Easterly* of the pond and creek on the *Point,* and a good way to *Golden* from the *Landing* and the mill, to and from his land so conveyed to him by *Bush.* In so enlarging and widening the dam, *Bush* expended the sum of 200 dollars, and *Golden* the sum of 10 dollars. By means of this improvement, a good and convenient way was furnished to them, over the dam, for them respectively to pass and repass, with cattle, teams, carts and other vehicles.

There is no access to the land on the *Point* from the *East* and *South,* it being bounded on those two sides by deep water. On the *North,* this land is separated from the public highway, by the land of *William H. Mead,* before referred to. On the *West,* it is bounded *Southerly* of the dam, by said creek, through which the tide ebbs and flows, and which has steep banks. *Northerly* of the dam, the mill-pond forms its *Westerly* boundary. There is, therefore, no other way, than over the dam, (except as before stated,) from the mill and *Landing,* and the other land of *Bush* lying *Westerly* of the pond and creek, to and from the land on the *Point.* But the committee were of opinion, that by digging away the banks of the creek below the mill, a way might, at a reasonable expense, be there made, by which, at low water, cattle, teams and carts might pass the creek, and which would reasonably accommodate the land on the *Point,* as it has always heretofore been used

and occupied, but would not be so convenient as the way over the dam.

The accounts between *Bush* and *Golden*, growing out of the enlarging and widening of the dam, were exhibited in an action of account tried between them, during the life of *Bush*; in which it was decided, that nothing was due to him, on account of his expenditures in this improvement; and nothing is now due from *Golden*, on account of such expenditures.

Before the death of *Bush*, and while he and *Golden* owned and held the mill, dam and pond, with the appurtenances, as tenants in common, *Golden* mortgaged his interest therein to sundry persons mentioned in the bill, to secure the notes therein described. These mortgages are still in full force, and the debts thereby secured wholly unpaid; and *Golden* has been left in the entire possession of the mortgaged premises.

From the 7th of *February* 1844, to the present time, *Golden*, by virtue of his title as tenant in common, has been in the entire possession of the mill, dam and pond, with the appurtenances, and has had the entire use, not only of the moiety belonging to him, but of the other moiety, and has received all the profits and earnings thereof; which profits and earnings, during that time, after deducting the expenditures by *Golden* in necessary repairs, and a reasonable compensation for his services in tending the mill, amount to 86 dollars, 12 cents; the one half of which sum, *viz.* 43 dollars, 6 cents, is now justly due from him.

On the 23d of *August* 1844, *Bush* died, leaving the plaintiff his only heir at law. His widow, *Sally Bush*, is entitled to dower in his estate; which has been represented insolvent, and commissioners have been appointed thereon. The time limited for the exhibition of claims to such commissioners, has not yet expired; and they have not yet made their report.

The value of the mill, dam and pond, with the appurtenances, is 2000 dollars; and the premises are so situated, that they cannot be apparted and divided in severalty, without great prejudice to those interested therein; and the interest of all concerned will be best promoted, by a sale of such estate, and a division of the moneys arising therefrom among the parties in interest.

In the opinion of the committee, a reservation to the plaintiff of a way across the dam, as prayed for in the bill, would not

incommode or injure the mill property, as it has been hitherto used and occupied, but would interfere with future improvements on that property : and in the opinion of the committee, such reservation would, upon a sale of the property, depress the price thereof 200 dollars.

The committee concluded their report, by recommending a sale of the mill, dam and pond, with the appurtenances, at such time, and in such manner, and with such reservations, as, upon the facts found, the court should deem equitable and proper.

The case, embracing these facts, was reserved for the advice of this court, as to what decree ought to be passed thereon.

*Hawley,* for the plaintiff, contended, 1. That she was entitled to a reservation of the way in question, as against *Golden.* This she was entitled to, first, by virtue of the agreement between *J. L. Bush* and *Golden.* It was agreed between them, that *Bush* should have the way, for the purposes of his land on the *Point.* For this agreement there was a sufficient consideration beneficial to *Golden,* in the way for himself, built almost entirely at *Bush's* expense. Their agreement has been *executed ;* it was on the strength of it, *Bush* built the way. If the plaintiff cannot now have the way, the expenditure is lost to her. She is deprived of the very thing, which was the subject and object of the agreement, and of the expenditure. For *Golden* to refuse the way, is a *fraud* upon the plaintiff, which a court of equity will not sanction or permit. 2 *Sto. Eq. sec.* 759. 774. *Newl. Cont.* 181. 183. 2 *Sw. Dig.* 31, 2. These considerations would entitle the plaintiff to the way, if the land were otherwise conveniently accessible.

But, secondly, the land is not accessible in any other way at all, except at low water ; and then only with great inconvenience. *Bush's* very object, in making the agreement and expenditure, was, to avoid the expense of any other way across the creek, and to get a good way here, passable at all times and in any manner.

Thirdly, the fact that the parties are tenants in common, strengthens the plaintiff's claim ; for in adjusting their concerns as such, equity will compensate *Bush.* 1 *Sto. Eq. sec.* 656. *b.*

Fourthly, if *Golden,* while the property remained unsold,

could not prevent the plaintiff's use of it as a way, she is entitled to have it *reserved*.

Fifthly, the objection that the property, if sold for other purposes, than that for which it has always been used, would, in the opinion of the committee, bring 200 dollars less, is unavailing. No other purposes are specified; nor is it shown, or made to appear probable, that it ever could be sold for any other purpose. At all events, this is the result of *Golden's* own deliberate agreement, on the faith of which *Bush* has acted. If the property were to be sold for 200 dollars less, *Golden* would lose only one half of it, while the plaintiff would lose the whole of the 200 dollars expended. And besides, the 100 dollars which *Golden* would, in such case, lose in the depreciation, would be more than made good to him in the way to his own house.

2. That the mortgagees have no greater rights than *Golden*. The way was there, and had been used for years, when they took their mortgages. This was at least sufficient to put them on enquiry, and to affect them with notice.

*Butler*, for the defendant, contended, That upon the facts found by the committee, there was no foundation laid for the interference of a court of equity, in regard to a way for the plaintiff over the dam mentioned in the bill. In the first place, there is no way there, to be reserved ; and if there be, how was it created? Not by necessity ; nor by grant ; nor by prescription; nor by laying out by the select-men. All that is found in the case, is, that the parties made a parol agreement, that they would enlarge the dam, for their mutual accommodation. This was but a licence. *Prince* v. *Case*, 10 *Conn. R.* 375. Secondly, the enlargement of the dam, for the purpose of passing, was to several tracts of *Bush* and of *Golden*, entirely unconnected with the joint estate. If a right of way there exists at all, it is a lien or incumbrance for the benefit of the several property of the tenants respectively. But money laid out on the joint estate, for the joint benefit even, does not constitute a lien. 1 *Sto. Eq. sec.* 655. If there be a way, it must be appurtenant to the several respective tracts of the parties. Would any such pass with either tract, by a conveyance of that tract ? Would a purchaser of the mill-site, with notice, take subject to such a right of way ? Thirdly, no

"line of safe precedents" will authorise a court of equity to interfere in this case, to establish a right of way. Fourthly, other methods of proceeding, furnishing an adequate remedy, are open to the parties. *Stat.* 339. (ed. 1838.) Fifthly, the rights of the mortgagees would be affected, by such reservation ; and the court will not prejudice their rights. 1 *Sto. Eq. sec.* 750.

WAITE, J.  The plaintiff, in her bill, states, that her father *Justus L. Bush*, in his life-time, and *Golden*, one of the defendants, owned, as tenants in common, a certain mill, dam, and pond of water ; that upon the death of her father, his share descended to her, as his only heir at law ; that *Golden* mortgaged his share to the other defendants, but has continued in possession, taking to himself the whole rents and profits. The bill, among other matters, prays for an account against *Golden*, a sale of the common property, and a division of the proceeds.

Thus far, no objection is made on the part of the defendants.  The account has been taken by the committee, and the defendants are willing to have a decree made for the sale of the property.

The only question involved in the case, which is submitted for our advice, is, whether upon the facts stated in the bill and found by the committee, the plaintiff is entitled to have a way reserved to her use across the dam, and have the common property sold, subject to that reservation.

The material facts in relation to this part of the case, are these.  In the year 1835, *Bush*, the father, and *Golden*, while they owned and possessed the property, as tenants in common, agreed to enlarge and widen the dam, principally for the purpose of furnishing the parties a good way between lands owned by them in severalty, and lying upon opposite sides of the stream over which the dam was built.  The dam was accordingly enlarged, chiefly at the expense of *Bush*, and was used by him, during his life, as a way to and from his lands, and by the plaintiff since, in the same manner.

It does not appear, that there was any thing more than a mere parol agreement, made by the tenants in common, while both were in possession, as to an improvement of their com-

mon property,—an execution of that agreement,—and an usage in conformity with it, down to the present time.

All the defendants, except *Golden,* are mortgagees of his interest; and there is nothing in the case, showing that they had any notice of this agreement, when they took their deeds, or acted otherwise than in good faith. The common property mortgaged to them, is much less in value than the amount of their debts; and the committee find, that the reservation of a way, would depress the price of the whole, two hundred dollars.

The question then is, has the plaintiff a right in equity to have this way set up, as against these mortgagees? It is virtually conceded, by the plaintiff in her bill, that these mortgagees now have the *legal title* to *Golden's* interest in the common property, that is, to one undivided moiety, free from any incumbrance whatever. The plaintiff, at most, has but an *equitable* title, which she is seeking to enforce against them, by the aid of a court of chancery. In other words, she seeks to have their legal title set aside in favour of hers of an equitable character only.

It has ever been the policy of our laws, to make every man's title to his real estate, as far as practicable, appear of record. It is true, there may be cases where this cannot well be done, as where a title has been acquired by possession. But our statute requires all grants and deeds of lands, to be recorded upon the records of the town where the lands are situated, and unless so recorded, are not good and effectual to hold such lands against any person but the grantor or his heirs. *Stat.* 390, 1. (ed. 1838.)

Hence, if *Bush* had taken from *Golden* a grant of this right of way, executed with all the formalities required by law, it would not be effectual as against these mortgagees, unless recorded, or they had notice of such conveyance. *Wheaton* v. *Dyer,* 15 *Conn. R.* 307. *Carter* v. *Champion,* 8 *Conn. R.* 549. Here the plaintiff shows no record of any title to this way, and no knowledge on the part of these mortgagees of the existence of any claim to such way, when they received their mortgage deeds.

It is said, on the part of the plaintiff, that unless she can have the way, she must lose the expenses incurred in making it. This may be very true, and very hard; but it does not

*Fairfield,*
June, 1846.
———
Bush
*v.*
Golden.

prove her title. It may, for aught we can see, be as hard for these mortgagees to have a portion of their security taken from them for the benefit of this plaintiff, as for her to lose the expenses incurred in enlarging the dam.

The plaintiff will be in no worse condition than she would be, had she purchased this right, taken a deed, paid her money, and then omitted to have caused her deed to be recorded, until the mortgagees had acquired their titles. The hardship of her case would not avail as against the mortgagees. Had *Bush* been desirous of securing this way to himself and his heir after him, it was his duty to have taken the requisite measures for that purpose. Not having done so, the loss is attributable to his negligence.

It is further said, that here has been an agreement executed by the parties, and consequently can be enforced in chancery. How this may be, as between the plaintiff and *Golden*, it is unnecessary to enquire. The question now is as to the rights of the mortgagees of *Golden*. They have made no contract with the plaintiff, or her father. They stand not as the parties to an executed agreement, but as purchasers without notice, having acquired the legal title.

Had they been notified of that agreement before they had taken their mortgages, then indeed they would be considered as standing in the place of *Golden*, and in order to determine their rights, it would be necessary to examine his. But they now stand before the court as *bona fide* purchasers of the legal title, for valuable consideration, without notice of any adverse claim. And no rule is more firmly established, than that, as against such persons, a court of equity will not interfere in favour of one who has but an equitable title.

Again, it is said, that when the mortgages were executed, the parties were in possession of the way, using it for their private purposes ; and that this was sufficient to put the mortgagees upon enquiry. But that was upon common property, which each had a right to use at pleasure. Such occupation does not prove a state of title inconsistent with the record title. The mortgagees knew that the occupants were tenants in common, occupying their common property.

It is finally insisted, that if these mortgagees were purchasers without notice, they were bound to show it ; that the burden of proof is upon them. Such, in our opinion, is not

the construction to be given to our recording system. The rule is, that a subsequent deed, first recorded, will prevail over a prior one subsequently recorded, unless the prior grantee can show knowledge in the other. The taking of the subsequent deed, with knowledge of the prior conveyance, is a fraud upon the first purchaser. This fraud will not be presumed, but must be shown, by the party seeking to avail himself of it. The burden of proof is upon him.

*Fairfield,*
June, 1846.

Bush
*v.*
Golden.

Upon the whole, then, as this plaintiff shows at most but an equitable title, founded upon an agreement of which no record was ever made, and does not show that the mortgagees of *Golden* had knowledge of any such agreement, when the conveyances were made to them, she fails to establish this part of her claim against them. We accordingly advise the superior court, to decree a sale of the common property, without any reservation of way to the plaintiff.

In this opinion the other Judges concurred.

Bill dismissed, as to reservation of way.