# Daniel Shotwell v. Charles A. Harrison.

*Covenant of warranty: Estoppel.* A warranty deed from a patentee of the United States, dated and purporting to be executed long before the issuing of the patent, operates by way of estoppel as against the grantor in such deed, and all persons afterwards claiming title through him, to transmit the title to the grantee therein.

*Clerk's certificate of official capacity, etc.: Judicial notice.* A clerk's certificate, attached to a deed executed and acknowledged in Franklin county, Massachusetts, as to the official capacity of the Justice of the peace, who took the acknowledgment, etc., which describes the certifying officer, as clerk of the judicial courts of the commonwealth of Massachusetts, for the county of Franklin, and which is signed by the clerk, and sealed with the seal of the Supreme Judicial Court of said commonwealth, is a sufficient compliance with the statutes of this state. (§ 2729, *Comp. L.*, and *Laws of 1861, p. 17,* § 3.) This court will take judicial notice that the Supreme Court of Massachusetts is a court of record.

*Evidence of marriage, legitimacy and sole heirship.* In support of a deed, which purports to be [executed by a widow as such, and by a son as sole heir of a deceased, who was the last prior owner of the lands described therein, depositions, taken by stipulation, of said widow, who speaks of said deceased as her late husband, and states that she knew him in his lifetime; that he died Oct. 15, 1866; that he left a widow and one child; that she is his widow, and that the other grantor in said deed is his son and his only child; and of the son, and his wife, and others who appear to‑have been neighbors, and to have known the family well, all to the same effect, in the absence of any opposing testimony, and when the death of the ancestor is clearly shown, and no question of identity is raised, are ample, original and sufficiently direct evidence of the marriage of the widow with said deceased, and of the legitimacy and sole heirship of the son.

*Title by priority of record: Purchase in good faith, and payment of a valuable consideration, both essential.* A defendant's title, resting on priority of record of a second deed, will prevail against that of a plaintiff who claims through a prior unrecorded deed from the same original grantor, if any one of the subsequent *mesne* purchasers through whom such defendant derives title, purchased in good faith, and for a valuable consideration, without notice of said prior unrecorded deed.—*Comp. L.,* § 2748. But both a purchase in good faith, and the payment of a valuable consideration, are essential; and these are in their nature separate and distinct questions.

*Presumption of payment of valuable consideration for quit-claim deed.* Where it does not expressly appear, from the record in this court, whether certain quit-claim deeds, introduced in evidence on the trial, purported on their face to have been given for a valuable consideration, but it seems to have been assumed by the counsel, in their mode of examination, arguments and requests to charge, and by the court below, in the charges given, as quit-claim deeds ordinarily and almost universally do express such consideration, this court will presume that such is the fact.

*Burden of proof of payment of valuable consideration.* The burden of proof is upon the defendant, who claims title by virtue of priority of record, against a prior but unrecorded deed, to show affirmatively the payment of a valuable consideration, and that by some other evidence than the mere recital of it in the deed.

　　CAMPBELL, Ch. J., dissenting and maintaining that a recorded deed is *prima facie* evidence, as against an unrecorded one, of everything necessary to give it validity.

*Burden of proof of purchase in good faith.* The good faith of the purchase is only required to be shown by the purchaser by proof of the record, on which he had a right to rely if he had no notice of the prior deed from any other source; and if he had such notice, this is an affirmative fact to be proven by the party claiming under the prior unrecorded deed.

*Record of certified copy of the record of a deed not evidence.* The record in one county of a certified copy, from the register of deeds of another county, of the record in such other county, is not admissible in evidence.

*Heard January 10.     Decided April 18.*

Error to Van Buren Circuit.

For statement of case see the opinion.

*E. Bacon* for plaintiff in error, as to burden of proof of payment of a valuable consideration, cited: *Godfroy v. Disbrow, Walk. Ch., 265; Wood v. Chapin, 13 N. Y., 509; Jackson v. McChesney, 7 Cow., 360; Jackson v. Elston, 12 Johns., 453; Amsden v. Manchester, 40 Barb., 159; Pomeroy v. Stevens, 11 Metc., 246; Bush v. Golden, 17 Conn., 594; Sumner v. Rhodes, 14 Conn., 135; Fort v. Burch, 6 Barb., 78; Hubbard v. Smith, 2 Gibbs, 207; Butler v. Stevens, 26 Me., 484; Thallhimer v. Brinkerhoff, 6 Cow., 102; Center v. Bank, 22 Ala., 743; Hine v. Dodd, 2 Atkyns, 275; Lawrence v. Stratton, 6 Cush., 163; Knott v. Garger, 4 Rich., 32; Sulboon v. Bates, 1 Lyttel, 42; Roberts v. Salisbury, 3 Gill. & Johns., 425.*

*George W. Lawton* and *H. F. Severens,* for defendant in error, as to proof of legitimacy, cited: *Wilkinson v. Adams, 1 Ves. & Beames, 422.* That the court properly took judicial notice that the Supreme Judicial Court of Massachusetts was a court of record.—*Jarvis v. Robinson, 21 Wis., 523; Butcher v. Brownsville, 2 Kan., 70.* As to the construction of the clerk's certificate,—*Harrington v. Fish, 10 Mich., 415.* That burden of proof of the payment of valuable consideration is on the purchaser and those claiming under him.—*Mowrey v. Vandling, 9 Mich., 41; Nolen v.*

*Gwynn, 16 Ala., 725 ; Lloyd v. Lynch, 28 Penn. St., 419 ; Dixon v. Hill, 5 Mich., 409 ; Dean v. Connelly, 6 Barr, 239 ; Carver v. Jackson, 4 Pet., 1 ; Jewett v. Palmer, 7 Johns. Ch., 65.*

CHRISTIANCY, J.

This was an action of ejectment brought by Harrison against Shotwell, in the Circuit Court for the County of Van Buren. The verdict and judgment were for the plaintiff below (defendant in error), and the case comes here by writ of error and bill of exceptions.

The land in question was patented by the United States to Thomas B. Millard, May 1st, 1839, and both parties claim title through the patentee. The plaintiff claimed through the following deeds : 1st, a warranty deed from Millard, the patentee, to Horatio N. Monroe, dated August 1st, 1837 (before the issuing of the patent) ; 2d, a warranty deed from Monroe to David Crittenden, of Conway, Massachusetts, dated March 19th, 1838, and recorded in the registry of deeds for Van Buren county, April 25th, 1838, and, 3d, a deed executed to the plaintiff by Harriet A. Crittenden as the widow, and George F. Crittenden as the sole heir of David Crittenden. The above deed from Millard, the patentee, to Monroe, conveyed also other lands situate in Barry county, and was duly recorded in the latter county in the year 1839, but was not recorded in Van Buren county until the 25th of February, 1868, after the institution of the suit ; though a copy from the Barry county record, certified by the register of deeds of that county, was entered upon the records in Van Buren county on the 11th day of January, 1868.

In the meantime, before the recording of Millard's deed to Monroe (or even the copy of it) in Van Buren county,

Millard, the patentee, had been induced to execute another deed—a quit-claim—of the lands in question, to one Thomas Silliman, dated the 4th day of January, 1865, which was recorded in Van Buren county on the 5th of January, 1865. It was through this deed and several *mesne* conveyances that the defendant Shotwell claimed title, as will be more particularly noticed when we come to consider that part of the case.

We shall first consider the questions raised in reference to the plaintiff's deduction of title, omitting, however, such of the exceptions as were not relied upon on the argument.

1st. (Taking the objections in their logical order), it was objected that the deed from Millard to Monroe was not admissible, because purporting to be executed long before the issuing of the patent to Millard, and it is urged that the court erred in charging the jury, that "the fact that Millard deeded to the plaintiff's grantor before he received a patent, makes no difference in the case." It is insisted that, as there was no evidence tending to show that Millard had previously entered the land, the deed could not operate as the conveyance of a title.

We see no force in this objection. The deed contained a covenant of warranty, and certainly operated by way of estoppel, as against Millard and all who might afterwards claim title through him; whether it operated strictly as a direct conveyance or transmission of title or not, is quite immaterial, as the defendant claimed under a subsequent conveyance from Millard. This point is entirely distinct from that of the priority of record, which would have been just the same if this deed had been executed after the issuing of the patent. This operation of a covenant of warranty is too well settled in this country to require a citation of authorities; but see the late case of *Irvine v. Irvine, 9 Wallace, U. S. R., 617.*

2d. It is objected that the deed purporting to be executed by the widow and heir of David Crittenden, was improperly admitted in evidence because it was executed and acknowledged in the state of Massachusetts, and the clerk's certificate to the official capacity of the Justice who took the acknowledgment to its genuineness and its execution according to the laws of that state, does not show that the clerk so certifying was the clerk of a court of record, as required by the statute.—*Comp. L., Sec. 2729, Laws of 1861, p. 17, Sec. 3.*

The clerk's certificate here commences:

" COMMONWEALTH OF MASSACHUSETTS, )
                "Franklin County,              } ss.

"I, Edward E. Lyman, clerk of the judicial courts of the commonwealth of Massachusetts, for the county of Franklin, do certify," etc., and it concludes thus: "In testimony whereof, I have hereunto set my hand and affixed the seal of the Supreme Judicial Court of the said commonwealth, this twelfth day of July, in the year of our Lord 1867." It is signed by the clerk and sealed with the seal of the Supreme Court.

We think this is a full compliance with the statute. It sufficiently appears that the clerk was the clerk of the Supreme Judicial Court, as well as of other judicial courts of that state for the county of Franklin; and we will take judicial notice that the Supreme Court of that state is a court of record. See *Jarvis v. Robinson, 21 Wis., 523; Butcher v. Bank of Brownsville, 2 Kans., 70.*

3d. It is objected that there was no proof that George F. Crittenden was the heir of David Crittenden, there being, as it is urged, no legal evidence of the marriage of his father and mother.

The depositions taken by stipulation are a full answer to this objection, not alone on the ground suggested by the

court, that they were taken by stipulation, but their admissibility and effect as original evidence would have been the same if taken by commission and without any assent of the defendant.

The deposition of Harriet A. Crittenden states that she knew David Crittenden in his lifetime; that he died October 15, 1866; that he left a widow and one child; that she is his widow, and the said George F. is the son of said deceased.    She also says, " I know that *my late husband, said David Crittenden,* frequently in his lifetime sent money to pay taxes on land in Van Buren county," etc. Her testimony also shows that said George F. was the only child of said David Crittenden.    The deposition of E. D. Hamilton, W. C. Campbell (both of whom seem to have been neighbors and to have known the family well) and of the said George F. and his wife are all to the same effect, —all speak of said Harriet A. as the widow, and of the said George F. as the son; all speak of the said George F. as the only child of the deceased, and some of them say expressly, and the others by the strongest implication, that they think deceased never had any other child.    The question of identity is not raised, and the death of the ancestor is clearly shown.

Now in the absence of all opposing testimony (of which there was none), we think this is not only sufficient but ample, original and sufficiently direct evidence of the marriage of the father and mother of said George F., of his legitimacy, and sole heirship; and if the jury had found otherwise it would have been the duty of the court at once to have set aside the verdict.    The law is very liberal in the admission of evidence in proof of marriage and pedigree, and if all the depositions cannot be considered as original, primary and direct evidence (see *1 Greenlf. Ev., Secs. 100 to 107 incl.; 2 Greenlf. Ev., Secs. 461, 462*), that of the

widow certainly is so. In the absence of any circumstance to excite suspicion of concealment or mental reservation, when a woman swears that she is the widow of a man who is deceased, and says he was her husband, it would be doing violence to common sense to say that she does not testify that they were married.

The rule which requires the best evidence, was fully complied with. See *Starkie's Ev. by Sharswood, 642, 644.* This rule does not operate to exclude evidence which is of the same grade or quality, merely because it is not all nor the most satisfactory which might be adduced, when the evidence offered and that which is withheld is of the same general quality and grade. See *Stark. Ev. ubi sup., and Cowan & Hill's Notes to Phil. Ev., 1st Ed., Note 414 and authorities cited.*

We see no error in any of the rulings of the court in reference to the admission or rejection of evidence of the plaintiff's title given upon the opening; and the plaintiff had made a clear *prima facie* title from the patentee.

But to meet this case the defendant set up the following claim of title and introduced the several deeds:

1st. (As already intimated) a quit-claim deed from Millard, the patentee, to Thomas Silliman, dated January 4th, 1865, and recorded in the registry of deeds in Van Buren county January 5th, 1865,—three years and more before Millard's deed to Monroe (under which plaintiff claimed), or even the copy of it, was recorded in that county.

2d. A quit-claim deed from Thomas Silliman to Mary Conway, dated January 4th, 1865 (the same day of the deed to him), which was duly recorded October 30th, 1867.

3d. A deed from Mary Conway to David Bacon, dated October 29, 1867, and recorded October 30, 1867.

4th. A quit-claim deed from Bacon to the defendant, dated the 6th of January, 1868, and duly recorded in Van

Buren county January 14th, 1868,—more than a month prior to the recording in that county of Millard's deed to Monroe.

The defendant thus established an apparent title by priority of record, through the subsequent (but first recorded) deed from Millard to Silliman. And if Silliman, or any one of the subsequent grantees claiming through him, purchased in good faith, without notice of the prior deed to Monroe, and for a valuable consideration, then the defendant's title must prevail over that shown by the plaintiff.

In reply to this case of the defendant, the plaintiff introduced evidence which was uncontradicted and conclusive, that Silliman gave no consideration whatever for the quit-claim from Millard to him, but that Mary Conway's husband, who seems to have owned a farm adjoining this land, entered into a correspondence with, and subsequently called upon Millard, representing to the latter that he had a claim upon this land, that there was some small imperfection in the title, and requested a quit-claim, which Millard, trusting to these representations, consented to give without any consideration; but when the deed was presented to him for execution he found that, instead of being drawn to Conway, it was to Silliman. He, however, executed it without inquiring into the reason for using Silliman's name, and Silliman, on the same day, and without any consideration, executed the quit-claim to Conway's wife. This, had the action been brought against Silliman or Mary Conway, would clearly have defeated any title either of them could have claimed by priority of record.

But no evidence was given tending to show any notice to Bacon of the prior deed to Monroe, nor that he had notice of any want of consideration for the deed to Silliman or that to Mrs. Conway, nor of any fact which could have any tendency to show that he was not a purchaser from Mrs. Conway in good faith, for a valuable consideration, and

in honest reliance upon the record title. Nor was there any affirmative evidence that he paid a valuable consideration, except the recital of a money consideration, in her deed to him. Nor did it appear, except by the recital, in Bacon's deed to defendant what consideration the defendant himself paid, nor whether he paid any, for the deed of Bacon to him, nor that defendant had any notice of a want of consideration for any of the deeds in his chain of title. It is not expressly stated in the record that the quit-claim deeds from Millard to Silliman, and from the latter to Mrs. Conway, or hers to Bacon, or Bacon's to defendant, purported on their face to have been given for a pecuniary or valuable consideration; but as quit-claim deeds ordinarily and almost universally do express such consideration, and it seems to have been assumed by the counsel in their mode of examination, arguments, and requests to charge, and by the court in the charge given, we must treat this as a fact in the case.

The court charged the jury in substance that to enable the defendant to avail himself of the priority of record of the deeds through which he claimed, either the defendant or some of his grantors after Millard must be found to have purchased in good faith and for a valuable consideration, and that the burden of proof was upon the defendant, to show affirmatively such consideration, and *that* by some other evidence than the mere recital of it in the deed.

This charge raises the most important question in the case.

Our registry law (*Comp. L., Sec. 2748*) makes the prior unrecorded deed void *only* "as against a subsequent purchaser in good faith and for a valuable consideration, whose conveyance shall be first duly recorded." The two essential facts, which give to the later but first recorded deed precedence, are: 1st, the purchase in good faith, and, 2d, the payment

of a valuable consideration.    As to the good faith, this is not required to be shown by the purchaser otherwise than by proof of the record, upon which he had a right to rely if he had no notice of the prior deed aside from the record; but if he had such notice, this is a fact affirmative in its nature, and it is therefore more reasonable to require it to be shown by the party claiming under the prior unrecorded deed than to call upon the purchaser to prove the negative. But the consideration which a party has himself paid for his own deed, is a fact peculiarly within his own knowledge, a fact affirmative in its nature, and which must therefore be presumed to be much more easy of proof than the negative fact of its non-payment could be to the opposite party.    It would seem, therefore, to. be more reasonable and just, in principle, to require the purchaser to give the affirmative proof of the consideration for his own immediate purchase, to bring himself within the protection of the statute, than to require . the other party to prove the negative,—the want or absence of consideration.    And this seems to be the general rule in courts of equity in similar cases. This is not presuming fraud or bad faith in the party holding the subsequent, but first recorded, deed, as the questions of good or bad faith and that of a valuable consideration, are distinct in their nature.    He may have taken the deed in entire good faith, within the meaning of the statutes, though he paid no consideration; or he may have purchased in bad faith, and yet paid a valuable consideration.    Good faith *and* a valuable consideration are both required to give the record precedence over the prior unrecorded deed.

But at law the authorities are conflicting as to the burden of proving the consideration or the want of it.    In *Jackson v. M'Chesney, 7 Cow., 360,* the Supreme Court of New York, while admitting the rule in equity to be as above stated, yet held that in an action of ejectment, when

the strict legal title only is in question, the recital of the consideration in the deed is *prima facie* evidence of its payment. And the same doctrine was reiterated (though the point was wholly unnecessary to the decision) in *Wood v. Chapin, 13 N. Y., 509.* Now, if there were any difference in the effect to be given to the fact of payment or non-payment, at law or in equity, there might be some tangible ground for such a distinction in the mode or burden of proof. But as the fact of the payment of the consideration will equally support the deed,. and the want of its payment will equally defeat it in both courts, it is not easy to discover any solid foundation for the distinction. Besides the recital in the deed in such a case as the present would seem to be *res inter alios,* mere hearsay, and to stand upon no other ground than the mere. declaration of the grantor, which would be no evidence against any party not claiming. under the deed, but against it. It would be otherwise with a recorded deed upon the faith of which the party has purchased, as in such a case the law has made the record evidence upon which he has a right to rely. And the Supreme Court of Alabama in *Nolen et al. v. Heirs of Gwyn, 16 Ala., 725* (and see *McGintry et al. v. Reeves, 10 Ala., 137*), repudiate the distinction and fully adopt at law the rule which, we have already stated, seems to us the more reasonable and just, whenever the question is whether the immediate purchase of the party to the suit was for a valuable consideration. The recital therefore of the consideration in the deed from Bacon to the defendant was not, in our opinion, any. evidence of its payment, and no other evidence of it was given.

But whether the defendant purchased with or without notice, and whether he paid any consideration or not, he would still hold the title, if Bacon, his grantor, could have held it as a purchaser in good faith and for a valuable

consideration; for if Bacon was such purchaser, he had not only a right to hold it, but to dispose of it by sale or donation, or transmit it by descent; and the purchaser, donee, or heir, whatever notice he may have had, would take his title. But if the purchaser from Bacon paid no consideration, his rights would stand exclusively upon Bacon's title, as much as if it had come to him by descent. But a purchaser for value, though having notice of the prior unrecorded deed, would be just as clearly a purchaser in good faith within the meaning and protection of the statute, as if he had purchased without notice of it, if his grantor could have held the property as a *bona fide* purchaser, for value; since no injury is done by such a purchase to the holder of the prior unrecorded title.

And Bacon, who, so far as appears by the evidence, purchased without notice of the prior deed to Monroe, was not, if he paid a valuable consideration, to be affected by any want of consideration for the conveyance to Silliman, or Silliman to Mrs. Conway, without showing that he had notice of such want of consideration. He had as much right to rely upon the truth of the record in respect to the payment of the consideration therein stated, as he had for the fact of the conveyance, or for the fact that no prior conveyance had been made. If a party undertaking to purchase on the faith of the record, and having no notice that the facts are otherwise, could not rely upon it as to the consideration stated, but was compelled at his own peril to go outside of the record in all cases to ascertain whether the consideration stated had been actually paid, the effect of the priority of the record would be greatly impaired, and the record would afford but a slender protection to purchasers.

And had the defendant shown that he had himself paid a valuable consideration for the conveyance from Bacon, he

might, perhaps, have established his own position as that
of a purchaser in good faith and for a valuable considera-
tion within the statute, whether he had himself notice of
the prior conveyance or not, Bacon not being shown to
have had notice of the prior conveyance or of any infirmity
in the chain of title exhibited by the record, and the
defendant himself having no notice of the want of consid-
eration in any of the recorded deeds, as the defendant
might then, perhaps (for the question does not here arise
and we give no definite opinion upon it), have relied upon
the truth of the record for the payment of the considera-
tion by Bacon, and by all prior parties, whether he had
himself notice of the prior conveyance or not.

But as the defendant has not brought his own purchase
within the protection of the statute, by proof that he had
himself paid any consideration, and without such payment
he has no equities and can lose nothing, he must rest his
case wholly upon Bacon's purchase, and must therefore show
that Bacon could have held the property, and he must do
this by showing all that Bacon would have been bound to
show had he been defendant. In other words, he must prove
the payment of a valuable consideration by Bacon.

There was therefore no error in the charge of the court
upon this point.

The view we have taken renders it unnecessary to deter-
mine whether any of the evidence introduced by the plain-
tiff had a tendency to show that defendant, himself, had
notice of the prior unrecorded deed to Monroe.

The court, against the objection of defendant, allowed
the plaintiff to introduce the record of Van Buren county,
of a certified copy from the register of deeds of Barry
county, of the deed from Millard to Monroe.

Though the statute (*Comp. L., Ch. 88*) makes provision
for recording copies in certain cases, there is no provision

which would authorize the recording of this copy, and it was therefore erroneously admitted.    The court, it seems, afterwards undertook to correct this error, by charging, in answer to the defendants request, that the record of this copy was, in law, no notice.    But the effect of this correction was neutralized, and the error perpetuated, by another part of the charge, stating this deed as recorded in Van Buren county on the 11th of January, 1868, the date of the recording of the copy, and which would have made the record of this deed take precedence by three days of that from Bacon to defendant, when, in fact, the deed itself was not recorded in Van Buren county until the 25th day of February, 1868, more than a month after the recording of defendant's deed, and after the commencement of this suit. The charge upon this point, as a whole, was well calculated to confuse the jury, and cannot be considered as curing the error, if indeed it was competent to cure the erroneous admission of the evidence by any charge which could be given.

The court also erred in refusing to charge, as requested by the defendant, that the whole chain of deeds given in evidence by the defendant have priority of record as against the plaintiff.

The judgment must be reversed, with costs and a new trial awarded.

GRAVES and COOLEY, JJ. concurred.

CAMPBELL, CH. J.

I cannot concur in the doctrine that a recorded deed is not *prima facie* evidence, as against an unrecorded one, of every thing necessary to give it validity.    Any other doctrine would render the registry laws of very little value.    They were adopted and received their meaning before parties, or

any interested persons, were admissible as witnesses, and it is not in the ordinary course of business that parties dealing in lands are able, usually, to prove the payment of consideration by witnesses. If any fraud was designed it would not be possible for the subscribing witnesses to know whether payments were genuine or fictitious; and it is so much out of the ordinary course to call their attention to payments, that when it is done it often of itself raises suspicions of dishonesty. Moreover, witnesses may die or be inaccessible, and the law provides no way of preserving their testimony until some conflict arises or is anticipated. One great object of acknowledgement and registry is to dispense with proof of handwriting and delivery. Receipts, outside of deeds, would be no better evidence under this ruling than receipts in them. And in case of the death of the parties, their heirs could seldom have the means of getting at the facts. The law has provided ample means for the protection of titles by registration; and if a party fails to protect himself, common justice requires that he should take the consequences. The law can never impute fraud without proof to a party who has complied with its provisions, in favor of one who has not. Arguments from extreme cases amount to nothing. If a second deed is executed so speedily as to get first on record, in spite of ordinary diligence, the defrauded party, by speedy resort to the courts, can seldom fail of redress. It is the delay that renders proof difficult, and he should suffer from it who is responsible for it.

The objection, that the recitals in the deed are *res inter alios*, has no force. The deed of the claimant asserted to be the prior in date is also *res inter alios* as to the second grantee, and yet a recorded copy is *prima facie* evidence that it was delivered at the time it purports to have been acknowledged, and is genuine, when in fact it may never have been delivered, may have been acknowledged by a fic-

titious party, or may be forgery throughout. The law admits it on the assumption that every presumption is made in favor of fairness. Such presumptions are inadmissible if one deed is not to be as much favored as another.

There is no legitimate foundation for the idea that courts of equity required proof in his own favor from a second grantee, whose deed is first recorded, any more than courts of law. It is only in modern times, and after much hesitation, that these questions have been allowed to be tried in actions of ejectment at all.—*Jackson v. Burgott, 10 J. R., 457.* In England the first recorded deed is not allowed, on any pretext, to be assailed at law. The presumptions are conclusive in its favor.—*Doe v. Allsop, 5 B. & Ald., 142.* And our practice, allowing the case to be tried at law, is universally recognized as a mere transfer of jurisdiction, which does not put the party in any different position than in equity. I agree fully that the rules of evidence should be the same. But it is not a correct view of the subject to hold that the doctrines which have never been departed from in New York since *Jackson v. M'Chesney, 7 Cow., 360,* are peculiar to courts of law. Judge Sutherland's remarks in that case have, I think, been misunderstood, or else the cases he cites do not bear him out. He was correct in saying there was no analogy between those cases, where in equity a plea of a *bona fide* purchase is set up, and these actions of ejectment. That plea was never called for or appropriate, except in cases where a complainant set up some equitable title against which, taking the allegations of the bill to be true, a defendant had no equitable defense. When the defendant had a legal title he could hold it until a complainant made out a better equity affirmatively by his bill, for where equities are equal the law must prevail, and a complainant, showing a legal title in defendant, was compelled to assume the burden of overthrowing it. The

22 mich.—54.

doctrine is very well summed up in the conclusion of the American note to *Bassett v. Nosworthy, 2 Lead. Ca. in Eq., 88 (pt. 1),* where the distinction is explained between those cases where a complainant seeks to get rid of a legal priority in a defendant, and those where the defendant has a mere equity.   The leading case of *Le Nevé v. Le Neve, Ambler, 436,* was the first in which it was held that a priority of record could be assailed in any court, and the doctrine has ever since been maintained that it may be done, but only by the most convincing proof of fraud, by notice or by want of consideration which raises a constructive fraud. Fraud is the only ground of interference, and it cannot be presumed. The doctrine which assumes this, without proof, is at war with all the recognized legal presumptions, and I cannot but regard it as dangerous and unreasonable.    The decisions in equity have certainly never tolerated such a doctrine.—*Bush v. Golden,* 17 *Conn.,* 594; *Glenn v. Grover, 3 Md.,* 212; *Frazer v. Western,* 1 *Barb. Ch. R.,* 220; *Wyatt v. Barwell,* 19 *Ves. R.,* 435; *Gresley's Eq. Ev., 368.* If the burden of proof was on the registered owner, I admit the receipt in a deed would be very trifling proof,—although even then it is admissible.—*Clapp v. Tirrell,* 20 *Pick.,* 247, and above cases.  But no such burden is on him.   The case of *Wood v. Chapin,* 13 *N. Y.,* 509, takes the same ground assumed earlier.

As the case of *Godfroy v. Disbrow, Walk. Ch.,* 260, laid down this doctrine in equity nearly thirty years ago, and it has never, so far as I have heard, been disputed before; and as the only cases which dispute the doctrine assume that they do so to introduce uniformity between law and equity, by making the equitable maxim apply, I am unable to admit the propriety of the rulings.    I think they are very far from equity and from equitable precedents.    We have ourselves held, in *Wurcherer v. Hewett,* 10 *Mich. R.,* 453, that

a complainant in foreclosure cannot assail a deed dated after but recorded before his mortgage, under the general charge that the defendant is a " subsequent purchaser," but must in his bill state the facts going to destroy the record priority. That case cannot be maintained if the burden of proof is on the owner of record. I have no recollection of any case in this state in which the deed has not been received as *prima facie* evidence of consideration, and I feel very sure that the rule in *Godfroy v. Disbrow* has never been departed from in practice to any considerable extent, if at all. We have borrowed so much of our statutory and equitable system from New York, that that fact alone should prevent us from seeking light from unfamiliar systems, or changing rules which certainly have worked no mischief, even if they were less necessary to the safety of record titles than I conceive this rule to be.

Upon the other points I concur with my brother Christiancy.